# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **In the Matter of the Search of a Black WD Elements 2TB Drive Bearing Serial Number WX72A711AVJY, Currently Located at 150 Court Street, Suite 615, in New Haven, Connecticut** | Case No. _____3:23-mj-609 RMS_____ <br><br> **FILED UNDER SEAL** <br><br> July 13, 2023 |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Brendan P. Lundt, Special Agent of the Department of Homeland Security, Homeland Security Investigations, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AFFIANT BACKGROUND

1.      I have been employed as a Special Agent of the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") since August 2003. I received training at the Federal Law Enforcement Training Center, Criminal Investigator Training Program ("CITP") and Homeland Security Investigations Special Agent Training ("HSISAT"). I have gained training and experience through training at the Federal Law Enforcement Training Center's Criminal Investigator Training Program. I am presently assigned to the HSI office in New Haven, Connecticut. As part of my duties, I am authorized to investigate violations of the laws of the United States, including but not limited to criminal violations relating to the sexual exploitation of children, child pornography, coercion and enticement, and

transportation of minors, as well as violations of Title 18, United States Code §§ 2422, 2423, 2251, and 2252A (and conspiracy and attempt to commit the same). I am authorized by law to request search warrants. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws and duly authorized by the Attorney General to request a search warrant. I am one of the officers involved in the investigation that is the subject of this affidavit and have personally participated in the investigation concerning the violations of the federal laws listed herein.

2.      The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement; my own investigation to include personal observations, documents, and other investigative materials that I have reviewed; and my training and experience as a Special Agent with HSI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3.      I make this affidavit in support of an Application for a Search Warrant to search and seize the contents of a Black WD Elements 2TB Drive, serial number WX72A711AVJY (the "TARGET DRIVE"), turned over to HSI by Detective James Baker of the Westport Police Department. The TARGET DEVICE is currently in the custody of HSI and is stored at 150 Court Street, Suite 615, in New Haven, Connecticut.

4.     As further explained below, the TARGET DRIVE contains data digitally extracted from two devices seized by CSSD officers from TILLEY's residence on or about March 9, 2023:

    a.  One HP Pavilion Laptop, serial number 5CD7257QGD; and

    b.  One Samsung 128GB Flash Drive.

5.     I have reason to believe the data on the TARGET DRIVE contains items that constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography), as specified in Attachment B, which is incorporated herein by reference.

## STATUTORY AUTHORITY

6.     This investigation concerns alleged violations of 18 U.S.C. § 2252A(a)(5)(B), which prohibits a person from knowingly possessing or knowingly accessing with intent to view any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

7.     The following definitions apply to this affidavit and Attachment B:

    a.  "Chat," refers to the process of communicating, interacting and/or exchanging messages over the Internet. It involves two or more

individuals that communicate through a chat-enabled service or software. Chat is also known as chatting, online chat or Internet chat.

b. "Child erotica," means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions. In addition, child erotica can be used to describe images that depict sexually explicit conduct, but your affiant believes the individuals depicted are "age difficult", meaning that your affiant is not certain whether the image depicts a person under the age of 18.

c. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d. "Computer," refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction

with such device" and includes smartphones, and mobile phones and devices.

e. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

f. "Internet Protocol address" or "IP address," refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

g. "Internet Service Providers" ("ISPs"), are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of 18 years.

i. "Records," "documents," and "materials," include all information recorded in any form, visual or aural, and by any means, whether in

handmade, photographic, mechanical, electrical, electronic, or magnetic form.

j. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

k. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

### Background on Travis TILLEY

8. I am currently investigating Travis TILLEY, an adult male born in 1983, for the federal offense of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (collectively, the "TARGET OFFENSE").

9. In 2019, TILLEY was convicted in the state of Connecticut of risk of injury to a child, which involved sexual intercourse with a person under the age of 13, in violation of the Conn. Gen. Stat. § 53-21(a)(2), and possession of child pornography in the third degree, in violation of Conn. Gen. Stat. § 53a-196f. On or

about November 1, 2019, TILLEY began serving a sentence of 20 years' imprisonment, suspended after 5 years, followed by 15 years' probation.

10.     On or about August 22, 2022, TILLEY was released from the custody of the Connecticut Department of Correction ("DOC"), and his probation period of 15 years commenced under the supervision of Connecticut Court Support Services Division – Adult Probation Services ("CSSD"). TILLEY is subject to lifetime registration as a sex offender because of his convictions.

11.     As part of his release, TILLEY was required to acknowledge and agree to abide by various conditions of probation. Those conditions are described in four documents entitled "Conditions of Probation," "Sex Offender Conditions of Probation," "Court-Ordered Special Conditions," and "Computer Access Agreement" (collectively, the "Probation Conditions"). TILLEY acknowledged that he had read, understood, and agreed to abide by the Probation Conditions by reviewing and signing each of the documents on two separate dates: March 24, 2022, and August 12, 2022. Included within the Probation Conditions are the following conditions:

  a. Keep the Probation Officer informed of where you are, tell your probation officer immediately about any change to your legal name, address, telephone number, cell phone number, beeper number, employment and allow the Officer to visit you as he or she requires. (Conditions of Probation).

b. Do not use the internet and/or have computer access without the approval from the supervising officer and treatment provider(s). (Court-Ordered Special Conditions).

c. Upon the direction of the supervising officer, immediately surrender any/all computers, tablets, phones, data storage devices or any other electronic devices/media of any type description or configuration for inspection and/or forensic evaluation as the supervising officer deemed appropriate. (Court-Ordered Special Conditions).

d. I will give a written explanation to my Probation Officer of the purpose for owning or using a computer(s), and any necessity for using the computer(s) to access the Internet or an email system. (Computer Access Agreement).

e. I will use only the computer(s) that I am authorized to use by my Probation Officer. (Computer Access Agreement).

f. I will not possess any sexually explicit or sexually stimulating material in any manner on disk, in computer hard drive, or any other electronic storage medium that can hold this type of material. (Computer Access Agreement).

g. I will not use any encryption software or devices without the permission of my Probation Officer. I will give my Probation Officer any and all passwords used on my authorized computer(s).

h. I agree and voluntarily consent lo having my computer examined and/or searched at any time, announced or unannounced, by Probation or its agent to verify compliance with the special conditions of my probation. (Computer Access Agreement).

12. On August 22, 2022, TILLEY reported for his initial appointment with his assigned probation officer. At that time, he denied possessing any computers or Internet-enabled devices. He noted, however, that his mother, whose identity is known to me and who shall be referred to in this affidavit as Individual-1, did possess such devices and that he would be residing with her. That same day, Individual-1 was advised during a phone call with CSSD that any devices in the home needed to be password protected and that TILLEY was not to access them. Individual-1 stated she was aware of these requirements and kept her devices in a locked room. TILLEY was advised that he would be responsible for any unprotected devices found in the residence. TILLEY stated he understood.

### The Visit to TILLEY's Residence by CSSD

13. On March 9, 2023, members CSSD conducted a field visit to TILLEY's reported residence in Naugatuck, Connecticut. Upon arrival, Probation Officer David Russ encountered Individual-1, who confirmed that TILLEY was home and led PO Russ to the second floor of the apartment.

14. Upon arriving at the second floor, PO Russ observed TILLEY sitting on the end of the bed in his mother's bedroom. TILLEY hurriedly left the room as PO Russ approach. As Russ passed the room, he observed in plain view a video game controller that was attached to a laptop computer where TILLEY had been sitting.

TILLEY was asked about the video game controller, but he insisted there was no controller. TILLEY's mother, Individual-1, accompanied PO Russ back to the bedroom where the laptop and controller were observed. Individual-1 stated that the laptop computer belonged to TILLEY. The laptop computer, identified as an HP Pavilion Laptop, serial number 5CD7257QGD, a Samsung 128GB Flash Drive (the "TILLEY DEVICES"), and an attached Vention USB Hub were seized.

### The Examination of the Seized Devices

15.     On March 13, 2023, the TILLEY DEVICES were transferred to Detective James Baker of the Westport Police Department for forensic examination. On March 16, 2023, Detective Baker provided the results of a forensic examination to PO Russ. The forensic report detailed that there was only one registered user of the HP laptop computer. The computer had been in use from the time of TILLEY's release from DOC custody, August 2022, until the time of PO Russ's visit on March 9, 2023. Data found on the computer listed the user as TILLEY with a date of birth that is known to me in the year 1983. A photograph of TILLEY was located on the computer depicting TILLEY holding up his Connecticut identification card along with a handwritten sign stating "Guimuabe #7301 Mommy's basement."

16.     The report indicated that TILLEY had utilized prohibited software and had accessed numerous sites that provide sexually explicit material. TILLEY was also utilizing an encrypted email service, which is also prohibited under his

conditions of probation. Two videos of child pornography were located and are described below[1]:

    a. File "█████████████████████████████████████ █████████" is a video approximately 1 minute and 51 seconds in length that depicts an adult male anally penetrating a prepubescent female with his penis.

    b. File "█████████████████████████████████" is a video approximately 1 minute and 43 seconds in length that depicts a prepubescent Asian female exposing her vagina, buttocks, and chest in multiple positions for the duration of the video.

17.    On May 3, 2023, Detective Baker provided me with a Black WD Elements 2TB Drive, serial number WX72A711AVJY, which he stated contained the data he extracted from each of the TILLEY DEVICES.

### Discovery and Background of the Tails Operating System

18.    On May 18, 2023, I spoke with Detective Baker, who provided me with additional information about the TILLEY DEVICES. According to Detective Baker, the laptop computer was configured to automatically load an operating system known as "Tails" from an external device when the laptop was powered on. Detective Baker

---

[1] According to Detective Baker, his descriptions of images and videos where he believes a minor (a person under the age of 18), is engaged in sexually explicit conduct are based on his experience working child exploitation cases and on his personal review of the image or video. He advised me that in making his assessments, he considered the totality of the circumstances, including the "minor's" physical size (height/weight); hair in the auxiliary areas (pubic area or under the arms); and development of the sexual organs (such as breasts in females). He further advised me that were he uncertain whether an image or video depicted a minor, he would have described it as "age difficult" or "child erotica."

further advised me that the Tails operating system was located on the Samsung 128GB Flash Drive seized with TILLEY's computer.

19.    I know, from my training, experience, and research, that Tails is a Linux-based "amnesiac" operating system that is designed to be booted from an external USB drive or DVD and leaves no digital footprint on the machine unless configured to do so by the user. Tails comes pre-loaded with a variety of security software that supports encryption of files and internet transmissions. Because Tails runs in a computer's random access memory (RAM), it does not write to the hard drive or other storage medium and therefore leaves no traceable evidence of its use or the user's activities. Although a user may choose to keep files using Tails, those files are stored in "persistent storage," which is encrypted by default and not detectable by forensic analysis. When Tails is shut down, it overwrites most of the computer's RAM and thus prevents forensic recovery of evidence of how the computer was used.

## TILLEY is Charged with Violating his Probation Conditions

20.    On March 28, 2023, state authorities arrested TILLEY and charged him with violating the conditions of his probation under Conn. Gen. Stat. § 53a-32. According to Connecticut Judicial Branch and DOC records, as of July 6, 2023, TILLEY is presently detained on a $1,000,000 bond. The case is pending in the Judicial District of Waterbury under Docket No. UWY-CR17-0447142-T.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO POSSESS AND/OR ATTEMPT TO VIEW CHILD PORNOGRAPHY

21.     Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who receive, possess and/or attempt to view child pornography:

    a. Such individuals often receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

    b. Such individuals may collect child pornography and/or child erotica in a variety of formats including electronic and hard copy including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.

    c. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    d. Such individuals often maintain their child pornography in a digital or electronic format such as a computer, cell phone or other electronic

storage. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e.  Importantly, evidence of such activity, including deleted child pornography, often can be recovered by law enforcement using forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

f.  Such individuals also may correspond with and/or meet others to share information and materials, rarely completely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, telephone numbers, and usernames of individuals with whom they have been in contact and who share the same interests in child pornography.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.  Based on my knowledge, training, and experience, I know that storage mediums, such as a USB device and an external hard drive, can store information for

long periods of time. Similarly, things that have been viewed via the Internet are typically saved for some period on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TILLEY DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DRIVE because:

    a. Data recovered from storage mediums can provide evidence of a file that was once on the storage mediums but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence extracted from a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the TARGET DRIVE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

25.  Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that evidence, more fully described in Attachment B, of the TARGET OFFENSE is located on the TARGET DRIVE, as more fully described in Attachment A to this affidavit. Therefore, your

affiant respectfully requests that this Court issue an order authorizing the search of the TARGET DRIVE, as more fully described in Attachment A, for the items, materials and records more specifically identified in Attachment B.

26.     Because the warrant only seeks permission to examine data already in law enforcement's possession, the execution of the warrants does not involve the physical intrusion onto a premises, and therefore good cause exists to permit the execution of the requested warrants at any time in the day or night.

BRENDAN P LUNDT
Digitally signed by BRENDAN P LUNDT
Date: 2023.07.13 08:11:09 -04'00'

BRENDAN P. LUNDT
Special Agent
Homeland Security Investigations

The truth of the foregoing affidavit has been attested to me by Special Agent Brendan P. Lundt over the telephone on this 13th day of July 2023.

Robert M. Spector
Digitally signed by Robert M. Spector
Date: 2023.07.13 14:10:25 -04'00'

HONORABLE ROBERT M. SPECTOR
United States Magistrate Judge

## ATTACHMENT A

### Property to be Searched

The property to be searched is a Black WD Elements 2TB Drive, serial number WX72A711AVJY (the "TARGET DEVICE"), turned over to Homeland Security Investigations (HSI) on May 3, 2023, by the Westport Police Department. The TARGET DEVICE is currently in the custody of HSI and is stored at 150 Court Street, Suite 615, in New Haven, Connecticut.

The TARGET DEVICE contains the forensic extractions of the following electronic devices:

a. One HP Pavilion Laptop S/N 5CD7257QGD; and

b. One Samsung 128GB Flash Drive (collectively, the "TILLEY DEVICES").

**ATTACHMENT B**

**Items to be Seized**

All records on the TARGET DRIVE, described in Attachment A, that relate to violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) (the "TARGET OFFENSE") and involve Travis Tilley from on or about August 22, 2022 to the present, including:

    a. Child pornography, as defined in 18 U.S.C. § 2256(8);

    b. Child erotica;

    c. In any format or media, all originals, copies and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    d. Records pertaining to the installation and use of the Tails Operating System;

    e. Any and all notes, documents, records, correspondence, and materials, in any format and media (including, but not limited to, letters, e-mail, chat logs and electronic messages), pertaining to the possession or receipt of child pornography, as defined in 18 U.S.C. § 2256(8), or to the possession or of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);

    f. Any and all names, addresses, contact information or lists of names, addresses or contact information, in any format and medium, of those who may have been contacted by computer or other means for the purpose of distributing or receiving child pornography, as defined in 18

U.S.C. § 2256(8), or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2);

g. Any and all notes, documents, records, or correspondence, in any format or medium, concerning communications about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography;

h. Any and all notes, documents, records, or correspondence, in any format or medium, concerning membership in online groups, clubs, or services that provide or make child pornography accessible to members;

i. Any and all records, documents, invoices and materials, in any format or medium that concern any accounts with an Internet Service Provider;

j. Any and all records, documents, invoices and materials, in any format or medium that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage;

k. Records or documents evidencing ownership of the TILLEY DEVICES;

l. Evidence of who used, owned, or controlled the TILLEY DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved

usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

m. Evidence of software that would allow others to control the TILLEY DEVICES, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software and evidence of the lack of such malicious software;

n. Evidence of the attachment to the TILLEY DEVICES of other storage devices or similar containers for electronic evidence;

o. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the TILLEY DEVICES;

p. Evidence indicating the geographic location of the TILLEY DEVICES when it was accessed or used during the TARGET OFFENSE;

q. Records of or information about Internet Protocol addresses used by the TILLEY DEVICES; and

r. Records of or information about the TILLEY DEVICES's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

27.     As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

28.     Pursuant to Rule 41(e)(2)(B), it is authorized that electronically stored information may be imaged or copied. Consistent with Rule 41(e)(2)(B), the warrant is deemed executed once the subject computer has been physically seized, and that review of the contents of the subject computer is permitted at a later time. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.